**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSUE FAURELUS,** | : |
| **Petitioner** | :  **CIVIL ACTION NO. 3:17-0727** |
| **v.** | :  **(JUDGE MANNION)** |
| **DEREK F. OBERLANDER,** | : |
| **Respondent** | : |

## MEMORANDUM

Petitioner, Josue Faurelus, files the above captioned petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He challenges his conviction and sentence imposed in the Court of Common Pleas of Luzerne County. Id. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.

## I.    Background

The procedural and factual background underlying Faurelus' conviction and sentence is adopted from the August 31, 2016 Memorandum Opinion of the Pennsylvania Superior Court, affirming the denial of Petitioner's petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§9541-9546, and is as follows:

Appellant was charged with criminal homicide (18 Pa.C.S. §2501) and possession of a firearm prohibited (18 Pa.C.S. §6105(a)(1)) in connection with October 20, 2008 shooting death of Christly Aristide ("the victim"). On that day, Jose Cruz agreed to drive Tabitha Bidgood and her friend, Appellant, to a home on High Street in Wilkes-Barre, Pennsylvania. Bidgood and Cruz stayed in the car while Appellant entered the home. Shortly thereafter, the victim exited the house and ran up the street. Appellant then left the home and jumped into Cruz's car. Cruz noticed Appellant's lip was bleeding. Appellant indicated that his friend had punched him and swore he was "going to get this nigger." Notes of Testimony (N.T.) Trial, 10/14/09 - 10/20/09, at 101, 409.

Once Cruz began driving, Appellant spotted the victim two blocks away. Appellant yelled for Cruz to stop the vehicle, got out, and ran behind the vehicle towards the victim. Bidgood heard Appellant say to the victim, "What now, pussy?" N.T. Trial at 411. Both Bidgood and Cruz heard gunshots. Cruz looked back and saw "a young guy on the floor" and claimed that he observed "someone getting beaten with something." N.T. Trial at 103. Appellant jumped back in the vehicle and told Cruz and Bidgood, "you guys didn't see nothing." N.T. Trial at 104. Appellant wiped the gun off, handed it to Bidgood, ordered her to get out of the car, and demanded that Cruz continue to drive.

Complying with Appellant's orders, Cruz observed an unmarked police car while stopped at a traffic light. Cruz waited at the light after it turned green, hoping the officer would initiate a traffic stop. Police subsequently detained Cruz's vehicle and arrested Appellant. Despite Appellant's attempts to remove gunpowder residue from his person, the police discovered gunpowder residue on Appellant's hands and clothing.

Police responded to the scene and found the victim with a head wound and two gunshot wounds, one of which was to the victim's back. Officers spoke to eyewitnesses who observed the victim being beaten while he lay on the ground dying. The victim was found in possession of $1,373 in cash. Through a tip from an informant, the officers also recovered the firearm used in the shooting from one of Appellant's associates.

Charged with the aforementioned offenses, Appellant filed several pretrial motions, including a motion to suppress a letter delivered to the prosecutor's office on November 21, 2008. On that date, an unidentified man gave a sealed letter addressed to the Luzerne County District Attorney to the office's receptionist, who in turn handed it to Assistant District Attorney Jeffrey Tokach. ADA Tokash opened the sealed envelope and discovered a second, previously opened envelope addressed to Appellant's girlfriend, Nicole Wenrich, from Appellant, who listed the county jail as the return address. This envelope contained a letter in which Appellant directed Wenrich to convince certain witnesses to provide false testimony.

After a hearing, the suppression court denied Appellant's motion, rejecting his argument that the Commonwealth violated a constitutionally protected privacy interest in the letter by reading the letter without first obtaining a warrant. Since the envelope Appellant sent to his girlfriend was already opened when delivered to the prosecutor's office, the suppression court reasoned that any alleged search of the letter was performed by a private party who was not acting as an agent of the Commonwealth or with the knowledge of a Commonwealth official. **See Commonwealth v. Harris**, 572 Pa. 489, 513, 817 A.2d 1033, 1047 (2002) (stating "[t]he proscriptions of the Fourth Amendment and Article I, §8, do not apply to searches and seizures conducted by private individuals") (citations omitted). Even assuming Appellant had a constitutional right to privacy in the letter,[1] the suppression court found the Commonwealth's viewing of the letter did not exceed the scope of the private search. **See id**. at 515, 817 A.2d at 1048 (indicating that "additional invasions of privacy by [] government agent[s] following a private search must be tested by the degree to which they exceeded the scope of the private search") (citation omitted).

---

[1] This Court pointed out on direct appeal that an inmate generally has no constitutional right to privacy in his non-privileged prison mail. **Commonwealth v. Faurelus**, No. 459 MDA 2010, unpublished memorandum at 7 (Pa.Super. filed September 28, 2011) (citing **Commonwealth v. Moore**, 928 A.2d 1092, 1102 (Pa.Super. 2007)).

On October 14-20, 2009, the trial court conducted a jury trial on the homicide charge.[2] As Appellant conceded he shot the victim, most of the Commonwealth's evidence was uncontested. Appellant's intent and state of mind at the time of the shooting were the disputed issues at trial. In support of its theory that Appellant intended to kill the victim, the Commonwealth called several eyewitnesses who testified that Appellant beat the victim while he lay dying. In addition, the Commonwealth's expert witness indicated Appellant shot the victim in the back. The Commonwealth also presented evidence that Appellant attempted to cover up the crime by discarding the murder weapon, trying to remove gunpowder residue from his body, and intimidating witnesses to influence their testimony.

Appellant testified in his own behalf, admitting to shooting the victim, but claiming he did so in self-defense. In giving his account of the events of October 20, 2008, Appellant alleged that after encountering the victim in the home on High Street, the victim punched Appellant, stole Appellant's money, and ran from the home. Further, Appellant claimed that, when the men met again in the street, the victim pulled a gun on Appellant. Appellant explained that when he reached to grab the gun from the victim, it went off, causing him to panic and run away without retrieving his money. The defense also presented the testimony of Appellant's sister, Nahomie Faurelus, who claimed that she had given Appellant $1,500 in cash before the shooting to pay Appellant's rent and medical bills and partly as a gift for Appellant's son's birthday.

At the conclusion of the trial, the jury convicted Appellant of third degree murder.[3] On February 23, 2010, the trial court sentenced Appellant to twenty to forty years' incarceration. Appellant filed a timely appeal. On September 28, 2011, this Court affirmed Appellant's judgment of sentence. On April 12, 2012, our

---

[2] Upon motion of the Commonwealth, the trial court severed the charge for illegally possessing a firearm from the homicide charge.

[3] Appellant pled guilty to the charge of possessing a firearm prohibited and was sentenced on a separate docket.

Supreme Court denied Appellant's Petition for Allowance of Appeal.

On December 10, 2012, Appellant filed a timely pro se PCRA petition.[4] The PCRA court appointed counsel to represent Appellant, held a hearing on his petition on May 27, 2015, and entered an order on June 9, 2013 denying the petition. This timely appeal followed. Appellant complied with the PCRA court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review on appeal:

> A. Whether Appellate Counsel was ineffective in failing to properly raise the issue of whether the evidence was sufficient to establish malice in that the Commonwealth, rather than [Appellant] had the burden to prove [Appellant] did not act in the heat of passion?

> B. Whether first Appellate Counsel was ineffective in failing to properly raise the issue of insufficiency of the Commonwealth's evidence in disproving his claim of self-defense in the 1925(b) Statement and whether Second Appellate Counsel was ineffective in failing to ask the Superior Court to remand the case back to supplement the 1925(b) statement?

> C. Whether Trial Counsel was ineffective for failing to object to hearsay testimony of Assistant District Attorney Jeffrey Tokach during the Suppression Hearing?

> D. Whether Trial Counsel was ineffective for failing to object and/or request a complete and adequate reinstruction of malice when the jury requested the definition of malice to be re-read to them during deliberation?

---

[4] **See** 42 Pa.C.S. §9545(b)(1) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final....").

E. Whether Trial Counsel was ineffective for failing to object to improper jury instructions given by the Court regarding the crime of voluntary manslaughter?

F. Whether Trial Counsel was ineffective in failing to object to prejudicial and improper statements made by the Commonwealth during the Commonwealth's closing argument?

Appellant's Brief, at 4 (reordered for review).

(Doc. 24-2 at 494, Commonwealth v. Faurelus, No. 1236 MDA 2015, slip op. at 1-7). On August 31, 2016, the Pennsylvania Superior Court affirmed the PCRA court's order denying Faurelus' petition. Id. On March 15, 2017, the Pennsylvania Supreme denied Faurelus' Petition for Allowance of Appeal. Commonwealth v. Faurelus, 710 MAL 2016 (Pa. 2/23/17).

On April 21, 2017, Petitioner filed a second PCRA petition. (Doc. 24). Four days later, April 25, 2017, he filed the instant petition for writ of habeas corpus. (Doc. 1). By Order dated May 17, 2017, this Court issued a stay of the instant petition for writ of habeas corpus. (Doc. 4). On September 20, 2018, Petitioner's second PCRA petition was denied. A Notice of Appeal was filed and docketed to 1767 MDA 2018, but it was subsequently withdrawn on August 16, 2019. On June 8, 2020 the stay of the Petitioner's federal habeas corpus was lifted, and a Notice of Election was sent to him. (Doc. 13, 15). On July 20, 2020 Petitioner filed an all-inclusive petition (Doc. 17).

## II.   Grounds For Relief

Faurelus' amended petition asserts the following grounds for relief:

1. The Commonwealth failed to present sufficient evidence of malice to rebut a claimed defense of heat of passion provocation.

2. Trial counsel was ineffective for failing to object to the Court's reinstruction on malice.

3. Direct appeal counsel was ineffective when presenting the issue of insufficient malice.

4. Trial counsel was ineffective for failing to request a proper jury instruction regarding voluntary manslaughter.

5. Trial counsel was ineffective for failing to object to the jury instruction that permits a finding of malice based on the use of a deadly weapon on a vital part of the body.

6. The Commonwealth violated Petitioner's Fourth Amendment rights when it search a letter delivered to the District Attorney's office.

7. Trial counsel was ineffective for failing to object to hearsay testimony of ADA Tokach during the suppression hearing.

(Doc. 17 at 20-21).

## III.   Standard of Review

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his

confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). 28 U.S.C. §2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of United States
>
> ....
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). This limitation places a high threshold on the courts. Typically, habeas relief

will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994) (citations omitted).

Section 2254(d)(1) applies to questions of law and mixed questions of law and fact. In applying it, this Court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. §2254(d)(1). It is " 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision'." Dennis v. Sec'y, Pennsylvania Dep't of Corr., 834 F.3d 263, 280 (2016) (*en banc*) (quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, this Court must determine whether the Superior Court's adjudication of the claim at issue was "contrary to" that law. Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (explaining that the "contrary to" and "unreasonable application of" clauses of §2254(d)(1) have independent meaning). A state-court adjudication is "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States" §2254(d)(1), "if the state court applies

a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," id. at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. Williams, 529 U.S. at 406. Therefore, the issue in most federal habeas cases is whether the adjudication by the state court survives review under §2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case'." Dennis, 834 F.3d at 281 (quoting Williams, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. Id. He must show that it " '*was objectively unreasonable'*." Id. (quoting Williams, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must demonstrate that the Superior Court's decision "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See Lockyer, supra, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, §2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under §2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

Id. at 102.

The standard of review set forth at §2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" Burt v. Titlow, 571 U.S. 12, 18 (2013).7 "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." Dennis, 834 F.3d at 281 (quoting §2254(d)(2) and citing Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not

unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance'." Titlow, 571 U.S. at 18 (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)); see Rice v. Collins, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. Wood, 558 U.S at 301 (quoting Collins, 546 U.S. at 341-42).

If the Superior Court did not adjudicate a claim on the merits, the Court must determine whether that was because Petitioner procedurally defaulted it. If the claim is not defaulted, or if Petitioner has established grounds to excuse his default, the standard of review at §2254(d) does not apply and the Court reviews the claim *de novo*. See, e.g., Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). However, in all cases and regardless of whether the standard of review at §2254(d) applies, the state court's factual determinations are presumed to be correct under §2254(e)(1) unless Petitioner rebuts that presumption by clear and convincing evidence. Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010); Nara v. Frank, 488 F.3d 187, 201 (3d Cir. 2007) ("the §2254(e)(1) presumption of correctness applies

regardless of whether there has been an 'adjudication on the merits' for purposes of §2254(d).") (citing Appel, 250 F.3d at 210).

Faurelus' case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## III. <u>Discussion</u>

Petitioner's amended petition raises seven allegations of error, which include five claims of ineffective assistance of counsel. For the sake of clarity, the Court will initially address Petitioner's two free standing claims before collectively addressing Petitioner's ineffective assistance of counsel claims.

### Claim 1 - <u>Sufficiency of Evidence</u>

Petitioner claims that the Commonwealth "did not offer any evidence, from any source, which would prove or even suggest the absence of heat of passion upon the provocation, as constitutionally required by Mullaney v. Wilbur, 421 U.S. 684 (1975) and Due Process demand, that in order to establish malice needed for murder, 'the Due Process Clause requires the prosecution to prove, beyond a reasonable doubt, the absence of heat of passion or provocation, when the issue is properly presented in a homicide case,' Mallaney, 421 U.S. at 693-705." (Doc. 17 at 87).

The "clearly established Federal law" governing sufficiency of the evidence claims is set forth in the United States Supreme Court's decision in Jackson v. Virginia, 443 U.S. 307 (1979). Under Jackson, evidence is sufficient to support a conviction if, "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. "Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts'." Coleman v. Johnson, 566 U.S. 650, 651 (2012) (quoting Jackson, 443 U.S. at 319).

The sufficiency of the evidence supporting Petitioner's third degree murder conviction was raised on direct appeal. The Superior Court set forth the following standard of review:

> When examining a challenge to the sufficiency of the evidence, our standard of review is as follows:
>
> > The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as

- 14 -

a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Hansley**, 24 A.3d 410, 416 (Pa.Super. 2011) (quoting **Commonwealth v. Jones**, 874 A.2d 108, 120-21 (Pa.Super. 2005)).

(Doc. 24-2 at 588, Commonwealth of Pennsylvania v. Faurelus, No. 459 MDA 2010, slip. op. at 13).

Clearly, the Superior Court applied the Pennsylvania equivalent of the Jackson standard. See also Evans v. Court of Common Pleas, Delaware Cnty., 959 F.2d 1227, 1233 (3d Cir. 1992) (noting that the test for sufficiency of the evidence is the same under both Pennsylvania and federal law). Because the Superior Court applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of §2254(d)(1). See, e.g., Williams, 529 U.S. at 405-06.

We next consider whether the trial court's decision amounted to an "unreasonable application" of Jackson.

Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury ... to decide what conclusions should be drawn from evidence admitted at

- 15 -

trial. A reviewing court may set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." Cavazos v. Smith, 565 U.S. 1 (2011). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable'." Ibid. (quoting Renico v. Lett, 559 U.S.766 (2010)).

- - -

[T]he only question under Jackson is whether [the state court's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. §2254(d).

Coleman, 566 U.S. at 651, 656.

Faurelus' sufficiency of the evidence claims mirror those raised on appeal.  Specifically, Faurelus claims that "[a]s to the element of Malice in this case, the Commonwealth "failed to offer any evidence, which would prove, beyond a reasonable doubt, or even suggest the absence of heat of passion upon provocation, as Constitutionally required by Due Process, under the directives of Mullaney v. Wilbur, 421 U.S. 684 (1975) when the issue is properly presented in a homicide case." (Doc. 17 at 20). Specifically, Petitioner claims that the Commonwealth failed to prove an absence of provocation and passion beyond a reasonable doubt, as interpreted in Mullaney. Id.

In considering Petitioner's issue, the Superior Court, initially found that

"Appellant's Rule 1925(b) statement did not include the specific allegation of the Commonwealth's failure to disprove the self-defense claim" and "[t]herefore, Appellant waived this argument for appellate review." (Doc. 24-2 at 589). Thus, Petitioner's claim of disproving his self-defense claim is unexhausted and procedurally defaulted.

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' 28 U.S.C. §2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default.  See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)."  McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule.  See Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as

a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," Murray, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. Edwards, 529 U.S. at 451; Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

Faurelus fails to identify some objective external factor which prevented him from complying with the state's procedural rules in presenting this claim, and he does not demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. Nor is there any argument or indication that a "constitutional

violation has probably resulted in the conviction of one who is actually innocent," Murray, 477 U.S. at 496. Federal review of Petitioner's claim that the Commonwealth did not disprove his self-defense claim is foreclosed.

As to the remainder of Petitioner's claim, that the Commonwealth failed to prove that Petitioner acted with malice, the Superior Court noted that:

> "Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the preparation of a felony, but contains the requisite malice." **Commonwealth v. Ventura**, 975 A.2d 1128, 1142 (Pa. Super. 2009), *appeal denied*, 604 Pa. 706, 987 A.2d 161 (2009).
>
>> The elements of third degree murder, as developed by case law, are a killing done with legal malice but without specific intent to kill required in first degree murder. Malice is the essential element of third degree murder, and is the distinguishing factor between murder and manslaughter.
>>
>> Malice under the law comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intend[ed] to be injured. **Malice may be inferred from the attending circumstances of the act resulting in death. Otherwise stated, malice may be found where the defendant has consciously disregarded an unjustified and extremely high risk that [his] conduct might cause death or serious injury to another.**
>
> **Commonwealth v. Geiger,** 944 A.2d 85, 90 (Pa. Super. 2008), *appeal denied*, 600 Pa. 738, 964 A.2d 1 (2009) (internal citations omitted and quotation marks omitted) (emphasis added).
>
> Malice can be inferred from the use of a deadly weapon on a vital part of the victim's body. **Ventura, supra** at 1142. "To

summarize:  If there was an unlawful killing with (legal) malice, express, or implied, that will constitute murder even though there was no intent to injure or kill the particular person who was killed and even though his death was unintentional or accidental… ." **Commonwealth v. Seibert**, 622 A.2d 361, 365 (Pa. Super. 1993), *appeal denied*, 537 Pa. 631, 642 A.2d 485 (1994).

(Doc. 24-2 at 588-589).

Consistent with the elements of third degree murder, the Superior Court found sufficient evidence in the following:

> Regarding the sufficiency of the evidence to support the conviction, Tabitha Bidgood testified that she had known Appellant and the victim since July 4, 2008. On October 30, 2008, Appellant, Ms. Bidgood, and several others spent the day drinking alcohol and smoking marijuana at Ms. Bidgood's residence. At approximately 9:30 p.m., Ms. Bidgood called Jose Cruz to ask for a ride. Mr. Cruz agreed to give Ms. Bidgood a ride, and he drove his gold Ford Explorer to her residence. Upon arriving at the residence, Ms. Bidgood informed Mr. Cruz that she actually needed him to provide transportation for Appellant. Mr. Cruz did not know Appellant and did not feel comfortable with him. To alleviate his concerns, Ms. Bidgood offered to go along for the ride. Mr. Cruz ultimately agreed to drive Appellant and Ms. Bidgood. Appellant wore a striped shirt and a black "doorag" on his head and sat in the backseat of the vehicle.
>
> Appellant asked Mr. Cruz first to stop at a residence on High Street. Upon arriving at High Street, Mr. Cruz parked his vehicle in front of the residence, and Appellant exited the vehicle. From inside the vehicle, Ms. Bidgood saw Appellant step onto the front porch to speak with the victim, who wore a gray hoodie. Ms. Bidgood stated Appellant and the victim "were play fighting, got serious, and the [victim] actually full fledge hit [Appellant] and then ran." (See N.T. Trial, 10/14-20/09, at 409.) Mr. Cruz also testified that the victim ran away from the High Street residence. Minutes later, Appellant left the residence and returned to the vehicle. Mr. Cruz immediately noticed blood coming from Appellant's lip. When Mr. Cruz asked what had happened,

Appellant responded, "My friend just punched me in my mouth." (Id. at 101). Ms. Bidgood testified that Appellant also said, "I'm going to get this nigger." (Id. at 409).

With Appellant inside the vehicle, Mr. Cruz departed from High Street. Approximately two blocks away, near the intersection of Grove and Moyallen Streets, Appellant saw the victim and ordered Mr. Cruz to stop the vehicle. Before the vehicle came to a complete stop, Appellant exited, approached the victim and said, "What now, pussy?" (Id. at 411). Ms. Bidgood heard three gunshots and saw muzzle flares coming from a firearm. Mr. Cruz also heard three gunshots. After hearing the gunshots, Mr. Cruz rolled down his window, looked to where the men were standing, and saw "somebody…getting beaten with something." (Id. at 103). Mr. Cruz also saw "a young guy on the floor laying there." (Id.) Mr. Cruz did not see any people in the street other than Appellant and the victim. Shortly thereafter, Appellant reentered the vehicle. Appellant told Mr. Cruz and Ms. Bidgood, "You guys didn't see nothing." (Id. at 104, 416).

As Mr. Cruz drove away from the scene, Ms. Bidgood observed Appellant using his undershirt to wipe down a firearm. When the vehicle stopped at a nearby traffic light, Appellant gave the firearm to Ms. Bidgood and said, "You know what to do with that." (Id. at 417). Appellant ordered Ms. Bidgood to take the gun and exit the vehicle. Ms. Bidgood complied with Appellant's commands. After returning to her residence, Ms. Bidgood wrapped the firearm in a black t-shirt, put the firearm into a plastic bag, and placed the plastic bag in an abandoned garage nearby. Ms. Bidgood later gave the firearm to Jeremy Battle, a mutual friend of Ms. Bidgood and Appellant. State police recovered the firearm during an unrelated investigation into the criminal activities of Mr. Battle.

Bianca Ennis, a Grove Street resident, testified that she could see the intersection of Grove and Moyallen Streets from her kitchen window. At approximately 10:45 p.m. on the night of the shooting, Ms. Ennis heard gunshots. After hearing three or four gunshots in rapid succession, Ms. Ennis looked out the kitchen window. Ms. Ennis said, "[I]t looked as though someone was being brutally beaten outside of my house." (Id. at 79). Ms. Ennis

explained, "[T]he entire time there was an SUV, a light colored SUV, that was stopped right in the middle of the street…." (*Id.* at 82). Ms. Ennis testified that after the beating ceased, the attacker stepped over the victim and entered the back of the vehicle.

Wilkes-Barre Police Officer Joseph Sinavage had just completed a 2:00 p.m. to 10:00 p.m. shift on the night of the shooting, and he went to visit a friend at 96 Grove Street. While inside his friend's residence, Officer Sinavage heard three gunshots. Officer Sinavage looked out a second floor window and "saw a man walking from the middle of the street to a parked Ford Explorer outside that residence underneath the streetlight…." (*Id.* at 57). Officer Sinavage described the man as wearing a "dark in color bandana on his head, black shirt with stripes on it." (*Id.* at 58). Officer Sinavage called 911 to report the shooting. Police and paramedics responded and found the victim lying in the middle of the street. Paramedics observed two fatal gunshot wounds, one to the back of the victim's head and another above his sternum.

Approximately ten minutes after the shooting, police stopped Mr. Cruz's vehicle in the parking lot of a nearby convenience store. Officer Sinavage arrived at the convenience store, identified Appellant as the man he had seen, and police arrested Appellant. After police had cuffed Appellant's hands behind his back, Officer James Conmy placed Appellant in the back of a patrol vehicle. A few moments later, Officer Conmy observed Appellant with his hands in front of him, rubbing them on his legs. Officers removed Appellant from the vehicle and re-cuffed his hands behind his back. Officers also placed plastic bags over Appellant's hands. Subsequent testing revealed the presence of gunshot residue on Appellant's hands and clothing.

Here, the evidence established that Appellant exited Mr. Cruz's vehicle, shot the victim, and immediately attempted to conceal his crime by threatening the occupants of the vehicle, disposing of the firearm, and wiping gunshot residue from his hands. The element of malice can be inferred from Appellant's use of a firearm to shoot the victim's head and chest. **See Ventura, supra**. Under these circumstances, sufficient evidence

supported Appellant's conviction for third degree murder. **See** 18 Pa.C.S.A. §2502(c).

(Doc. 24-2 at 244-248).

Taking into consideration all of this evidence as a whole and viewing the evidence in the light most favorable to the prosecution, the Court finds that the state court's conclusion that there was sufficient evidence at trial to establish the necessary elements for third degree murder and to sustain the verdict, is not objectively unreasonable.  There simply is no possibility that fair-minded jurist could find that this determination conflicts with applicable Supreme Court precedent.  Nor, based on review of the state court evidence, is it an unreasonable determination of the facts. Thus, habeas relief is denied as to Petitioner's sufficiency of evidence claim.

### Claim 6 – <u>Fourth Amendment</u>

Petitioner claims that a letter he mailed from a correctional facility to his girlfriend was "later intercepted by an alleged private party, who without leaving an explanation or any information about its contents, gave it to a secretary at the District Attorney's Office, in a 'sort of' torn condition but still containing its pages inside," and that the "subsequent warrantless actions of District Attorney Jeffrey Tokach in removing its multiple page contents to reveal the nature of the unexposed notes on them, which turned out to be incriminating, was an illegal search that went forth and thus exceeded the

scope of the alleged private search which had exposed no facts." (Doc. 17 at 21). Thus, Petitioner concludes that this "violated his privacy interest and right to be free from warrantless searches and seizures as protected by the 4th Amendment of the Constitution and thus, the trial court erred in denying Petitioner's motion to suppress its fruits." Id.

Faurelus raised these claims during post-trial motions and pursued them on direct appeal. The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976); see also, Wright v. West, 505 U.S. 277, 293 (1992); Marshall v. Hendricks, 307 F.3d 36 (3d Cir. 2002); Deputy v. Taylor, 19 F.3d 1485 (3d Cir. 1994)

On July 15, 2009, Petitioner filed a motion to suppress the letter to Ms. Wenrich as well as any testimony concerning its content. (Doc. 24-2 at 578). Petitioner asserted, "The opening of the…letters without a valid search warrant and without [Appellant's] consent, or any other exception to the warrant requirement, was in violation of [Appellant's] Constitutional rights…." Id. He also contended that the content of the letter led the police to interview several witnesses who provided statements to incriminate Petitioner; thus, the court should suppress the incriminating statements as "fruit of the

poisonous tree." Id. The suppression court conducted a hearing on September 23, 2009. Id. At the conclusion of the hearing, the court took the matter under advisement. Id. Prior to the court's ruling, the Commonwealth asked the court to reopen the record to receive additional testimony. On October 5, 2009, the court granted the Commonwealth's request. The court conducted another hearing on October 7, 2009, at which time Appellant formally objected to the reopening of the record. Id. Thereafter, the court received additional testimony on behalf of the Commonwealth. Id. On October 9, 2009, the court denied Appellant's suppression motion. Id. Petitioner raised his Fourth Amendment challenges in his direct appeal to the Superior Court. Id. The state courts thoroughly considered his claims and rejected them. Thus, because Faurelus had the opportunity to fully, and fairly, litigate his Fourth Amendment claim, habeas relief is not available.

### Claims 2-5, 7 - <u>Ineffective Assistance of Counsel</u>

Faurelus raises a multitude of ineffective assistance of counsel claims. The clearly established ineffective assistance of counsel standard as determined by the Supreme Court of the United States is as follows:

> Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court."

Williams, 529 U.S. at 391, 120 S.Ct. 1495. Under Strickland, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687, 104 S.Ct. 2052. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688, 104 S.Ct. 2052. This review is deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

> Id. at 689, 104 S.Ct. 2052

> Not every "error by counsel, even if professionally unreasonable, ... warrant[s] setting aside the judgment of a criminal proceeding." Id. at 691, 104 S.Ct. 2052. "Even if a defendant shows that particular errors of counsel were unreasonable, ... the defendant must show that they actually had an adverse effect on the defense"; in other words, the habeas petitioner must show that he was prejudiced by counsel's deficient performance. Id. at 693, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.

In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding.... In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process

that our system counts on to produce just results." Id. at 696, 104 S.Ct. 2052.

Rainey v. Varner, 603 F.3d 189, 197–98 (3d Cir. 2010).

When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.

The Superior Court stated that the proper standard governing ineffective assistance of counsel claims requires a petitioner "to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. **Commonwealth v. Sneed**, 616 Pa. 1, 18, 45 A.3d 1106 (2012) (quoting **Commonwealth v. Pierce**, 567 Pa. 186, 203, 786 A.2d 203, 213 (2001))." (Doc. 24-2 at 533). The Third Circuit has specifically held that the very ineffectiveness assistance of counsel test relied upon by the Superior Court in this matter is not contrary to the

Supreme Court's Strickland standard.  See Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Therefore, we reject any argument by Faurelus that the Superior Court's decision is contrary to Strickland.

Below, we consider whether the state courts' disposition of Faurelus' exhausted ineffective assistance of counsel claims involved an unreasonable application of Strickland or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state courts.

### Claim 2.   Trial counsel was ineffective for failing to object and request a complete and adequate re-instruction on Malice.

Petitioner states that "because of the evidence of provocation which, thereby, successfully triggered the application of the heat of passion/provocation defense, as a matter of law the only way to establish malice was, [for] the prosecution to prove beyond a reasonable doubt the absence of heat of passion when the issue is properly presented in a homicide case." (Doc. 17 at 92-93).  He argues that "under the above mentioned conditions for finding malice, in this case, initially, although the list of instructions given to the jury properly included an instruction that 'you can find malice or murder only if you are satisfied, beyond a reasonable doubt, that the defendant was not acting under sudden intense passion resulting from a serious provocation by the victim'," however, "after

deliberating for approximately two (2) hours and seven (7) minutes, the jury returned with a note indicating 'we would like to know the definition of malice'." Id. Petitioner concludes that "since it was impossible to look into the jurors' minds to determine what they forgot, missed and/or failed to understand about malice, without being selective, it was appropriate to take the question as if they forgot everything about malice, as a whole, since, they were not selective in their note" and, instead, "upon re-instruction the Court make no mention of the vital and essential requirement that they could find malice or murder only if they were satisfied, beyond a reasonable doubt, that the Defendant was not acting under intense passion from serious provocation, a potential area of instruction that likely could have remained lost in the jurors memory lapse and/or defect." Id. (emphasis in original).

After an evidentiary hearing May 27, 2015, the PCRA court determined in its December 17, 2015 Opinion, that Petitioner failed to demonstrate that he was prejudiced by trial counsel's alleged ineffectiveness as follows:

> We likewise find nothing improper in our response to the jury's request to be reinstructed with regard to malice.[5] The jury requested that we re-read the instruction as to malice, intent, first degree murder and third degree murder and we accommodated their request. (Trial N.T. page(s) 814). Counsel cannot be deemed ineffective for failing to object to that which is patently

---

[5] We instructed the jury as follows: "Accordingly you can find malice and murder only if you are satisfied beyond a reasonable doubt that the Defendant was not acting under a sudden and intension passion resulting from serious provocation by Christly Aristide." (Trial N.T. page 797-798).

not objectionable. Defendant's brief suggests that trial counsel failed to request a jury instruction indicating that specific intent to kill is not a requirement of voluntary manslaughter. Initially, we note that the Defendant has not put forth any evidence which would suggest that he was prejudiced by this jury instruction. Additionally, we instructed the jury to begin its deliberation considering the highest graded offense first and directed them only to proceed to the lesser included offenses if or when they find Defendant not guilty of the greater offense. (Trial N.T. page(s) 809-810). Given our instructions, there is no opportunity for the jury to be confused as the Defendant's brief suggests, nor is it of any moment that the jury did not hear another personalized iteration of the voluntary manslaughter instruction. The Defendant was convicted of third degree murder and therefore the jury did not have to consider voluntary manslaughter.

(Doc. 24-2 at 752-753).  The Superior Court affirmed the PCRA court finding the following:

Fourth, Appellant contends that trial counsel was ineffective for failing to object and/or request a complete and adequate reinstruction of malice when the jury requested the definition of malice to be re-read to them during deliberation. However, after reviewing the record, we note that the trial court fully accommodated the jury's request by thoroughly explaining the concept of malice and the differences between first and third degree murder. N.T. Trial at 814-18. As such, there was no reason for counsel to object or request a different instruction. Thus, we find this claim to be without merit.

(Doc. 24-2 at 506).

While states may choose to define crimes as they see fit, the Constitution requires that every element necessary to constitute the crime be proven beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 (1970). The Due Process Clause is violated if a jury instruction relieves the

state of its burden. See Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009); Sandstrom v. Montana, 442 U.S. 510, 521 (1979). As a reviewing court, we may be asked, as here, whether there is "some 'ambiguity, inconsistency, or deficiency' in the instruction, such ... that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Sarausad, 555 U.S. at 190-91 (quoting Middleton v. McNeil, 541 U.S. 433, 437 (2004) (*per curiam*), and Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Boyde v. California, 494 U.S. 370, 380 (1990))). In making this determination, we must not judge the jury instruction "in artificial isolation" but rather consider it in the context of the instructions as a whole and of the trial record." Id. at 191 (quoting Estelle, 502 U.S. at 72). Our Court of Appeals cautions that "[w]hile a single defect does not necessarily make an instruction erroneous, ... other language in the instruction does not always serve to cure the error. This is so even when other language correctly explains the law." Bey, 856 F.3d at 241 & n.54 (citing Francis v. Franklin, 471 U.S. 307, 322 (1985)). Where two conflicting instructions are given, and nothing in those specific sentences or in the charge as a whole "makes clear to the jury that one of these contradictory instructions carries more weight than the other," the constitutional infirmity of the instruction is not absolved by "[l]anguage that merely contradicts and does not explain" the

constitutionally infirm instruction. Francis v. Franklin, 471 U.S. 307, 322 (1985). In cases, where "[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict," the error cannot be deemed harmless. Id. See also Bennett v. Superintendent Graterford SCI, 886 F.3d 268, 284-85 (3d Cir. 2018) (reviewing case law).

As is apparent from the trial transcript in this case, that after charging the jury on self-defense and justification, the judge then charged the jury with the types of malice for each degree of murder and then proceeded to define the elements of the three types of criminal homicide, beginning with the most serious. (Doc. 24-2 at 21-30). When asked to define malice, intent, and First and Third degree murder, the trial court limited his response to only that, defining malice and again explaining the elements necessary for First and Third degree murder and manslaughter. (Doc. 24-2 at 33-34). Any argument by trial counsel that the court's instruction violated Petitioner's due process rights would have been without merit, as the trial court was required only to answer the jury's question and not re-read its entire charge. Weeks v. Angelone, 528 U.S. 225, 234 (2000). Where a judge "respond[s] to the jury's question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry," and the jury asks no follow-up question, this Court has presumed that the jury fully

understood the judge's answer and appropriately applied the jury instruction. Id. Accordingly, this Court cannot conclude that trial counsel's performance in failing to object and request a complete and adequate re-instruction on malice was objectively unreasonable under the Strickland test. Thus, the Court finds that the state courts' decisions were not contrary to, or an unreasonable application of, established federal law.

### Claim 3.    Direct Appeal Counsel was ineffective.

Plaintiff claims that appellate counsel was ineffective for failing to argue "the specific issue of the Commonwealth's failure to satisfy the Due Process requirement of proving absence of heat of passion from provocation in establishing malice, in this particular type of homicide case as was articulated in Mullaney v. Wilbur, 421 U.S. 685 (1975)." (Doc. 17 at 100).

This Court, having found that the Commonwealth presented ample evidence to show that Appellant did not act in self-defense, supra at 19-23, finds that the Superior Court's determination that "that defense counsel had a strategic basis for not raising a weak sufficiency claim to focus on other issues that they believed had arguable merit" (Doc. 24-2 at 504) is a reasonable application of the arguable merit prong of Strickland and constitutes an objectively reasonable determination of the facts in light of the evidence presented to the state court. Faurelus is not entitled to relief on this claim.

**Claim 4.     Trial Counsel was ineffective for failing to request a proper jury instruction and object to inadequate jury instruction regarding voluntary manslaughter.**

Petitioner states that trial counsel was ineffective for failing to "request a proper jury instruction and object to inadequate jury instructions couched only in terms that a voluntary manslaughter finding required an intent to kill, without any accompanying explanation of the other types of intent such as to inflict serious bodily injury or intent with a degree of recklessness which would also suffice; a failure which likely relieved the prosecution of it's Due Process burden of disproving heat of passion for establishing malice/murder since it prevented a voluntary manslaughter verdict even if the jury found that defendant acted under circumstances that would have otherwise been heat of passion, but lacked intent to kill, leaving them stuck at 3rd Degree Murder, which was described as not requiring intent to kill." (Doc. 17 at 107).

Voluntary Manslaughter requires an intentional killing of another person. See 18 Pa.C.S. §2503(b).

The trial court's jury instruction, in pertinent part, reads as follows:

The Commonwealth must prove, however, that he or she took action while consciously, that is, knowingly disregarding the most serious risk he or she was creating and that by his or her disregard of that risk, he or she demonstrated his extreme indifference to the value of human life.

On the other hand, a killing is without malice if the perpetrator acts with lawful justification or under circumstances that reduce the killing to voluntary manslaughter. When deciding whether the

Defendant acted with malice, you should consider all of the evidence regarding his words, conduct and the attending circumstances that may show his state of mind. If you believe that the Defendant intentionally used a deadly weapon on a vital part of Christly Aristide's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the Defendant acted with malice.

As my earlier definition of malice indicates, there can be no malice when certain reducing circumstances are present. When these circumstances are present, a killing may be voluntary manslaughter but never murder. This is true when a Defendant kills in the heat of passion following serious provocation or kills under an unreasonable mistaken belief in justifying circumstances. Accordingly, you could find malice and murder only if you are satisfied beyond a reasonable doubt that the Defendant was not acting under a sudden and intense passion resulting from serious provocation by Christly Aristide or under an unreasonable belief the circumstances were such that if they existed would have justified the killing.

A Defendant acts under an intense passion if he or she acts under an emotion such as anger, rage, sudden resentment or terror that is so strong that it renders him or her incapable of cool reflection. A Defendant acts under a sudden passion if the time between the provocation and the killing is not long enough for the passion of a reasonable person to cool. A Defendant's passion results from serious provocation if it results from conduct or events that are sufficient to excite an intense passion in a reasonable person. Thus, the existence of intense passion turns on the actual mental and emotional state of Defendant while the existence of sudden passion and serious provocation turn on how a reasonable person confronted by the same provocation would react.

Remember, you can find malice and murder only if you are satisfied beyond a reasonable doubt that the Defendant was not acting under a sudden and intense passion resulting from serious provocation by the victim.

The law recognizes that the cumulative impact of a series of related events can lead to sudden passion and amount to serious provocation. The test is whether a reasonable person confronted with the same series of events would become so impassioned that he or she would be incapable of cool reflection.

The reducing circumstance of a Defendant acting under an unreasonable belief that the circumstances of a killing were justified applies where the Defendant actually believed that he was in imminent danger of death or serious bodily injury at the time he used deadly force, but his belief was unreasonable in light of the facts as they appeared to him at the time. The Defendant did not provoke the use of force by the alleged victim by engaging in conduct that showed it was his intent to cause death or serious bodily injury to the alleged victim and the Defendant did not violate his duty to retreat from the place, surrender possession of something or comply with a lawful demand as I explained those terms when I described to you the justification defense.

Therefore, you can find malice and murder only if the Commonwealth proves beyond a reasonable doubt one of the following elements:  That the Defendant did not actually believe that he was in immediate danger of death or serious bodily injury from Christly Aristide at the time he used deadly force, note that the unreasonableness of the Defendant's belief is not in issue here as it was when I explained justification to you. The question is whether the Defendant actually believed such an immediate danger existed at the time he used deadly force and to prove malice through this element, the Commonwealth must prove that the Defendant did not actually hold such a belief or the Defendant provoked the use of force by the alleged victim by engaging in conduct that showed it was his intent to cause death or serious bodily injury to the alleged victim, or the Defendant could have avoided the use of deadly force by retreating from the place, surrendering possession of something or complying with a lawful demand as I had previously defined those concepts for you when I discussed the defense of justification.

If you do not find that the Defendant had malice and committed murder, you may find him guilty of manslaughter as long as you

are satisfied that the following three elements have been proven beyond a reasonable doubt:  First, that Christly Aristide is dead; second, that the Defendant killed him; and third, that the Defendant had the intent to kill.

(Doc. 24-2 at  27-29).

The Superior Court addressed this issue on appeal, finding the following:

Fifth, Appellant argues that trial counsel was ineffective for failing to object to the trial court's jury instruction regarding the voluntary manslaughter charge, asserting that the jury was misled into believing they could not convict Appellant of the lesser offense of voluntary manslaughter unless they found Appellant had specific intent to kill the victim. Appellant contends that trial counsel should have asked the trial court to include in this instruction that the jury could find Appellant had intent to kill or seriously injure the victim in convicting him of voluntary manslaughter. Appellant cites **Commonwealth v. Moore**, 398 Pa. 198, 202, 157 A.2d 65, 68 n. 2 (1959), for the principle that "where there is a nonmalicious felonious killing with a specific intent either to kill or to seriously injure, it is voluntary manslaughter." **Id**.

With respect to jury instruction challenges, our Supreme Court has held the following:

When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.  A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

- 37 -

> **Commonwealth v. Fletcher**, 604 Pa. 493, 546, 986 A.2d 759, 792 (2009) (internal citations and quotations omitted).
>
> Regardless of whether the trial court's instruction was proper,[6] Appellant has not shown any prejudice in counsel's decision not to object as the record contains overwhelming evidence of Appellant's intent to kill the victim. Appellant fired his weapon at the victim several times, hitting several of the victim's vital body parts and piercing several of his vital organs. The jury was free to infer from Appellant's conduct in using a deadly weapon on the victim's vital body parts that Appellant intended to kill the victim. **See Hitcho, supra**. The Commonwealth also presented testimony of eyewitnesses that observed Appellant subsequently beating the victim as he lay dying from the gunshot wounds Appellant inflicted. Appellant has not shown it is probable that, but for counsel's failure to object to the instruction, the result of the proceeding would have been different. **See Johnson, supra**. This lack of prejudice leads us to conclude that the PCRA court did not err in denying this ineffectiveness claim.

(Doc. 24-2 at 506-508).

Here, the Superior Court concluded that when "consider[ing] the charge on voluntary manslaughter as a whole," the trial court arguably provided the correct instruction regarding the elements of the crime. Id. And, even had it not done so, the Superior Court noted that Petitioner had failed to establish prejudice. Id. The state court's determination was not objectively unreasonable. A thorough review of the trial court's instruction show that it

---

[6] We note that the Supreme Court has provided that "[v]oluntary manslaughter, imperfect self-defense, requires that the Commonwealth establish that the defendant 'intentionally and knowingly' killed another." **Commonwealth v. Weston**, 561 Pa. 199, 207, 749 A.2d 458, 462 (2000) (quoting 18 Pa.C.S. §2503(b)).

tracked Pennsylvania's standard criminal jury instruction for voluntary manslaughter. See *Pennsylvania Standard Suggested Jury Instructions (Criminal)* §15.2503A (1979). Thus, there is no basis for habeas relief.

Moreover, even if the trial court's jury instruction was erroneous, the Superior Court's determination that Petitioner nonetheless failed to establish prejudice was not unreasonable. The Superior Court noted that the jury found that Petitioner's actions revealed an intent to kill. (Doc. 24-2 at 506-508). The Superior Court concluded that this evidence supported that Petitioner did not act in the heat of passion. Id.

Even if the trial court's instruction had included language Petitioner believed necessary, given the evidence, the verdict would not have been different and his trial counsel, therefore, did not render ineffective assistance. As such, this claim does not merit habeas relief.

### Claim 5. Trial Counsel ineffective for failing to object to Court's instruction that the jury could infer malice.

Petitioner claims that trial counsel was ineffective for failing to object to "the Court's contradicting and misleading part of the jury instructions that can't be applied for finding malice in this type of homicide case, that 'If you believe the Defendant intentionally used a deadly weapon on a vital part of the victims body you may regard that…if you choose, to infer that the Defendant acted with malice'." (Doc. 17 at 116). Petitioner believes that this

"relieved the jury of the obligation of finding the absence of heat of passion upon provocation, in finding malice and thereby effectively relieved the Commonwealth of it's Due Process burden of proving that fact." Id.

The Superior Court dismissed Petitioner's claim on appeal as follows:

First, Appellant contends appellate counsel was ineffective in failing to properly raise a challenge to the sufficiency of the evidence supporting his third-degree murder conviction. Appellant claims counsel should have argued that the burden of proof was improperly shifted to Appellant to prove he did not act with malice, but instead acted in the heat of passion to warrant a conviction on the lesser offense of voluntary manslaughter.

Although the issue statement is styled as a sufficiency claim, Appellant seems to argue in his brief that trial counsel should have asked the trial court to instruct the jury that the Commonwealth had the burden of disproving that Appellant acted in the heat of passion. However, the trial court did instruct the jury that the Commonwealth had the burden of proof and indicated that if they believed Appellant acted in the heat of passion, this finding would eliminate the element of malice. Specifically, the trial court stated that the jury "could find malice and murder only if you are satisfied beyond a reasonable doubt that [Appellant] was not acting under a sudden and intense passion resulting from serious provocation by [the victim]." N.T. Trial at 797.[7]

In addition, Appellant suggests trial counsel should have not allowed the trial court to instruct the jury that both specific intent and malice may be proven by the use of a deadly weapon to a vital part of the victim's body. However, our Supreme Court has emphasized that "the finder of fact may infer malice and specific intent to kill based on the defendant's use of a deadly weapon on a vital part of the victim's body." **Commonwealth v. Hitcho**, ___Pa.___, 123 A.3d 731, 746 (2015) (citing **Commonwealth v.**

---

[7] Appellant does not claim that defense counsel were ineffective in deciding not to pursue an argument that he acted in the heat of passion.

Arrington, 624 Pa. 506, 86 A.3d 831, 840 (2014), *cert. denied*, ___U.S. ___, 135 S.Ct. 479, 190 L.Ed.2d 363 (2014)). The trial court did not shift the burden of proof to Appellant, but found it reasonable for the jury to infer Appellant's malice as he admittedly shot the victim in the abdomen and back, where the bullets punctured several of the victim's vital organs. N.T. Trial at 489-91.

While Appellant argues that trial counsel should have asked the trial court for a specifically worded jury instruction, he does not show actual prejudice as he failed to show there is a reasonable probability that the outcome of his trial would have been more favorable to him had counsel objected to the trial court's instruction. **See Commonwealth v. Spotz**, 624 Pa. 4, 47-48, 84 A.3d 294, 320 (2014) ("to establish prejudice from trial counsel's failure to object to the challenged portion of the [jury] charge, [the petitioner] must show there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different"). We thus conclude that the PCRA court correctly dismissed this claim of ineffectiveness.

(Doc. 24-2 at 501-503).

Again, the Superior Court, having found that the challenged portion of the trial court's instructions were proper, particularly viewed in light of the instruction as a whole, Petitioner's underlying claim the trial counsel was ineffective for failing to object to such instruction is without merit.

### Claim 7.    Trial counsel ineffective for failing to object to hearsay testimony during Plaintiff's suppression hearing.

Petitioner claims that trial counsel was ineffective for "failing to object to the hearsay testimony of District Attorney Jeffrey Tokach which denied Petitioner's right and need to confront and cross-examine the allege

Case 3:17-cv-00727-MEM-DB   Document 41   Filed 08/23/22   Page 42 of 45

declarant, under oath, to test the truth and accuracy of her alleged, out of court, statements and involvement in the matter." (Doc. 17 at 137).

Finding that Petitioner was not prejudiced by the entry of the letter, the Superior Court affirmed the PCRA court's dismissal of Petitioner' ineffective assistance claim as follows:

> Third, Appellant claims trial counsel was ineffective for failing to object to hearsay testimony of Assistant District Attorney Jeffrey Tokash during the Suppression Hearing. Appellant takes issue with the fact that the trial court allowed ADA Tokash to testify that the receptionist of the prosecutor's office told him that an unidentified male dropped off the letter addressed to the district attorney's office. Appellant claims that he suffered significant prejudice when the Commonwealth was allowed to admit this letter, which Appellant wrote to his girlfriend in an attempt to dissuade witnesses from testifying or in influencing their testimony.
>
> The PCRA court rejected Appellant's argument as it found that trial counsel had a strategic basis for refraining from objecting to ADA Tokach's testimony. Atty. Fannick testified at the PCRA hearing that he wished to focus on his theory that the Commonwealth had violated Appellant's right to privacy in reading the letter without the permission of Appellant or the letter's intended recipient. On direct appeal, Appellant had argued there was no evidence to establish that anyone other than the district attorney or the police had viewed the letter and thus, contended that there was a governmental intrusion of privacy which exceeded that of any private party.
>
> Regardless of whether the PCRA court properly admitted ADA Tokach's testimony, we find that Appellant has not shown he was prejudiced by the entry of this additional evidence that Appellant attempted to influence witness testimony before his trial. Appellant's girlfriend, Nicole Wenrich, testified at trial that Appellant would call her and send her letters from prison asking her to contact Cruz and Bidgood to influence their testimony.

- 42 -

Both Jose Cruz and Tabitha Bidgood testified that either Appellant himself or Appellant's associates approached them and asked them not to testify or to testify in favor of Appellant. Wenrich also shared that Appellant asked her to research how to eliminate gunshot residue from clothing. The actual letter from Appellant to Wenrich was merely cumulative evidence corroborating the aforementioned testimony that Appellant attempted to cover up his role in the shooting. As a result, we find the PCRA court did not err in dismissing this ineffectiveness claim.

(Doc. 24-2 at 504-506).

To demonstrate deficient performance, Faurelus must show that his counsel's actions "fell below an objective standard of reasonableness under prevailing professional norms." Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999) (citing Strickland v. Washington, 466 U.S. 668, 688 (1984)). The inquiry requires courts to be " 'highly deferential' to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight." Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002) (quoting and citing Strickland, 466 U.S. at 689–90). Indeed, counsel is presumed to have acted within the range of "reasonable professional assistance," and the defendant bears the burden of "overcom[ing] the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Strickland, 466 U.S. at 689 (quoting and citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

The Court find that Faurelus' counsel performed reasonably when employing his strategy for refraining from objecting to ADA Tokach's testimony. Specifically, that he wished to focus on his theory that the Commonwealth had violated Appellant's right to privacy in reading the letter without the permission of Appellant or the letter's intended recipient. Because counsel's conduct could reasonably be considered part of a sound trial strategy, we conclude that it was not unreasonable for the state courts to conclude that Petitioner failed to establish that trial counsel's performance was deficient.

Regardless, Petitioner has not shown prejudice, as his girlfriend, Ms. Wenrich, testified that Petitioner asked her to influence the testimony of two other witnesses. Thus, the disputed letter was merely cumulative evidence of Petitioner's attempts to cover up his role in the murder of the Victim. As such, Petitioner is not entitled to habeas relief on this claim.

## IV.   Certificate of Appealability

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" Tomlin v. Britton, 448 Fed.Appx. 224, 227 (3d Cir. 2011) (citing 28 U.S.C. §2253(c)). "Where a district court has

rejected the constitutional claims on the merits, ... the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

For the reasons set forth herein, Petitioner has not made a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable that Court's assessment of the claims debatable or wrong. Accordingly, a COA will not issue.

## V.    **Conclusion**

For the reasons set forth above, the Court will deny the petition for writ of habeas corpus. A separate order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 23, 2022**
17-0727-01

- 45 -